UNITED STATES DISTRICT COURT
WESTERN DIVISION OF LOUISIANA
LAFAYETTE DIVISION

JARED GILL                                CIVIL ACTION NO. 6:14-CV-02869

VERSUS                                    MAGISTRATE JUDGE HANNA

PETROLEUM CO-ORDINATORS,                  BY CONSENT OF THE PARTIES
INC. AND XYZ INSURANCE
COMPANY

## MEMORANDUM  RULING

Currently pending are the parties' cross-motions for summary judgment (Rec.

Docs. 24 and 26), both of which address whether the defendant, Petroleum

Coordinators, Inc. ("PCI"), violated the Uniformed Services Employment and

Reemployment Rights Act of 1994 ("USERRA"), 38 U. S. C. § 4301 *et seq*., or any

relevant Louisiana state laws by failing to promptly reemploy the plaintiff, Jared Gill,

when he returned from active military service.  Considering the evidence, the law, and

the arguments of the parties, and for the reasons fully explained below, this Court will

grant both motions in part and deny both motions in part.

## BACKGROUND

Defendant PCI is a staffing company that provides administrative and

information technology professionals to work for oil companies on a contract basis.

Mr. Gill was hired by PCI on November 12, 2012 to work as a rig administrator for

Shell on its Permian Basin shale project, and he was trained to operate Shell's

proprietary software.  He was not trained to work for any other customer of PCI. Sixteen other PCI employees were hired about the same time as Mr. Gill, and they were all assigned to Shell's Permian Basin project.

After going to work for PCI in November 2012, Mr. Gill spent eight weeks training at Shell's training facility in Robert, Louisiana.  (Rec. Doc. 33-3 at 20).  Mr. Gill is a member of the United States Army Reserve.  During this training period, he was notified that he would be deployed in active duty with the United States Army. (Rec. Doc. 33-3 at 20).  From approximately February 3 to March 3, 2013, Mr. Gill was away from work, performing his pre-deployment training with the army.  (Rec. Doc. 33-3 at 20-21).  He then went back to work on Shell's Permian Basin project in the Midland, Texas area.  (Rec. Doc. 33-3 at 21).  Mr. Gill was not assigned to a particular rig.  The last day he worked for PCI was March 20, 2013.  (Rec. Doc. 33-3 at 9).  On April 8, 2013, he reported to the Army for deployment to Kuwait.  (Rec. Doc. 33-3 at 9).  Mr. Gill returned to the United States on February 3, 2014.  (Rec. Doc. 33-3 at 9).  Approximately five to seven days thereafter, he was released from active duty.  (Rec. Doc. 33-3 at 9).  During the time period that Mr. Gill was deployed, PCI did not hire anyone to replace him.  (Rec. Doc. 33-3 at 87).

On February 3, 2014, Mr. Gill sent a text message to his PCI supervisor, Dewey Allen, then he spoke with Mr. Allen by telephone, advising that he was back

in the country and wanted to go back to work.  (Rec. Doc. 33-3 at 11).  According to

Mr. Gill, Mr. Allen told him that he would be back at work in about two weeks.  (Rec.

Doc. 33-3 at 11).  Mr. Gill spoke with Mr. Allen about two weeks later, and Mr. Allen

said that he would talk with Bobby Dawson, PCI's vice president, about Mr. Gill's

start date.  (Rec. Doc. 33-3 at 12).  In March 2014, Mr. Gill again communicated with

Mr. Allen, and it was Mr. Gill's impression that Mr. Allen was trying to figure out

where Mr. Gill would be assigned to work.  (Rec. Doc. 33-3 at 13-14).  According to

Mr. Gill, Mr. Allen did not tell him there was no work available or tell him what had

happened to Shell's Permian Basin project while he was on active duty.  (Rec. Doc.

33-3 at 15).  In April or May 2014, Mr. Gill spoke with Mr. Dawson by telephone

about where he would be placed when he returned to work.  (Rec. Doc. 33-3 at 16-

18).  On June 3, 2014, Mr. Gill followed up by text message.  (Rec. Doc. 33-3 at 16-

17).  Thereafter, Mr. Gill spoke with Mr. Dawson approximately three more times.

(Rec. Doc. 33-3 at 26).

At some point, Mr. Dawson went to Houston and spoke with Sharon Lampl of

Shell about putting Mr. Gill back to work.  (Rec. Doc. 24-3 at 57, 33-3 at 71).  When

a position became available in September 2014 due to the resignation of another rig

administrator, Ms. Lampl called Mr. Dawson and asked if he had someone for the job,

and Mr. Dawson recommended Mr. Gill.  (Rec. Doc. 24-3 at 58, 33-3 at 72).  Ms.

-3-

Lampl told Mr. Dawson that the job was Mr. Gill's because he was already trained and familiar with the area, but two formalities would have to be satisfied – Mr. Gill would need to submit a resume and Mr. Gill would have to be interviewed by telephone.  (Rec. Doc. 24-3 at 58, 33-3 at 72).

On September 30, 2014, PCI's Glen Wofford e-mailed Mr. Gill advising that his resume had been forwarded to Shell and that Shell wished to interview him; on October 1, 2014, Mr. Gill responded by selecting October 6 at 3:00 p.m. for the date and time of the telephone interview.  (Rec. Doc. 30-19 at 4).  On October 1, 2014, Mr. Wofford replied, confirming the date and time of the interview, providing the call-in information, and identifying the persons who would be on the call – Ms. Lampl of Shell and PCI employees, Mr. Dawson, Ryan Gunning, and Allen Tripp.  (Rec. Doc. 30-19 at 3).  On October 3, 2014, Mr. Gill responded by advising that a lawsuit had been filed on his behalf and that he would be unable to speak with anyone at PCI without his attorney present.  (Rec. Doc. 30-19 at 1).  He then sent an e-mail to Mr. Dawson on October 6, 2014, stating that he had no problem with the interview but would prefer to have his attorney present.  (Rec. Doc. 30-19 at 1).  Mr. Dawson replied asking – yes or no – if Mr. Gill would participate in the telephone interview. (Rec. Doc. 35-1 at 61).  Mr. Dawson did not tell Gill that his attorney *could not* be on the call.  (Rec. Doc. 24-3 at 61).  But Mr. Dawson did not tell Mr. Gill that his

-4-

attorney *could* be present on the call either.  Mr. Dawson replied only to ask if Mr. Gill would participate in the interview – yes or no.  (Rec. Doc. 24-2 at 33).  Mr. Dawson called in to the interview, along with Glen Wofford and Allen Tripp of PCI.  (Rec. Doc. 24-3 at 59-60).  Mr. Gill did not call in for the interview.  (Rec. Doc. 24-3 at 60).  A few months later, Mr. Gill went to work for another company.

## THE PARTIES' CONTENTIONS

In support of his motion for summary judgment, Mr. Gill argued that PCI violated USERRA by failing to promptly put him back to work when he returned from Kuwait.  In support of its cross-motion, PCI argued that its failure to reemploy Mr. Gill was justified and consequently did not violate USERRA.  In support of their motions, the parties also took opposing positions with regard to Mr. Gill's non-USERRA claims.

## ANALYSIS

### A.   THE SUMMARY JUDGMENT STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the

applicable governing law.[1]  A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.[2]

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact.[3]  If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact.[4]  All facts and inferences are construed in the light most favorable to the nonmoving party.[5]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's

---

[1]    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

[2]    *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252; *Hamilton v. Segue Software, Inc.*, 232 F.3d at 477.

[3]    *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[4]    *Washburn v. Harvey*, 504 F.3d at 508.

[5]    *Brumfield v. Hollins*, 551 F.3d at 326, citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

claim.[6]   The motion should be granted if the nonmoving party cannot produce evidence to support an essential element of its claim.[7]

When both parties have submitted evidence of contradictory facts, a court is bound to draw all reasonable inferences in favor of the nonmoving party.[8]   The court cannot make credibility determinations or weigh the evidence, and the nonmovant cannot meet his burden with unsubstantiated assertions, conclusory allegations, or a scintilla of evidence.[9]   "When all of the summary judgment evidence presented by both parties could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial and summary judgment is proper."[10]

Interpretations of statutory provisions that are dispositive and which raise only questions of law, there being no contest as to the operative facts, are particularly appropriate for summary judgment.[11]

---

[6]      *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008), citing *Celotex Corp. v. Catrett*, 477 U.S. at 325.

[7]      *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

[8]      *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).

[9]      *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d at 540.

[10]      *Greene v. Syngenta Crop Protection, Inc.*, 207 F.Supp.2d 537, 542 (M.D. La. 2002), citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[11]      *Dobbs v. Costle*, 559 F.2d 946, 947 (5th Cir. 1977).  See, also, *Kemp v. G.D. Searle & Co.*, 103 F.3d 405, 407 (5th Cir. 1997) ("questions of statutory interpretation are questions of law.").

## B.   <u>USERRA</u>

USERRA is a federal statute that was enacted to encourage noncareer service in the uniformed services, to minimize the disruption of the lives of those who serve in the uniformed services and their employers, and to prohibit discrimination against persons who serve in the uniformed services.[12]   It mandates "the prompt reemployment of such persons" upon the completion of their service.[13]   The term "prompt reemployment" has been interpreted to mean reemployment "as soon as practicable under the circumstances of the case."[14]

USERRA does not require veterans to be treated preferentially; instead, it requires workers who are members of the military to be treated the same as their non-military coworkers.[15]   USERRA is to be liberally construed for the protection and benefit of military service members.[16]   USERRA addresses both the initial employment of persons who serve in the military and also the reemployment of such persons following a period of active military service.   In this case, however, there is

---

[12]     38 U.S.C. § 4301(a).

[13]     38 U.S.C. § 4301(a)(2).

[14]     *Rogers v. City of San Antonio*, 392 F.3d 758, 763 (5th Cir. 2004).

[15]     See *Rogers v. City of San Antonio*, 392 F.3d at 764.

[16]     *Mayeaux v. Houston Independent School Dist.*, 986 F.Supp.2d 842, 847 (S.D. Tex. 2014), citing *Coffy v. Republic Steel Corp.*, 447 U.S. 191, 196 (1980).

no claim that Mr. Gill was denied initial employment due to his having served in the military; accordingly, only the provisions of USERRA addressing the reemployment of an employee returning from military service to the civilian workforce are implicated in this lawsuit.

In support of his motion for summary judgment, the plaintiff argues that PCI violated three separate sections of USERRA, 38 U.S.C. §§ 4311, 4312, and 4313.

**(1)    THE SECTION 4311 CLAIM**

Under 38 U.S.C. § 4311, USERRA is violated when an employer fails to reemploy a person returning from military service because of the employee's status as a member of the uniformed services.  Section 4311(a) states that "[a] person who is a member of. . . a uniformed service shall not be denied . . . reemployment. . . by an employer on the basis of that membership. . . ."  Under Section 4311(c), "[a]n employer shall be considered to have engaged in actions prohibited [by Section 4311(a)] if the person's membership. . . in the uniformed services is a motivating factor in the employer's action. . . ."  The jurisprudence has interpreted the statute to mean that "military status is a motivating factor if the defendant relied on, took into account, considered, or conditioned its decision on that consideration."[17]  Military

---

[17]      *Coffman v. Chugach Support Servs., Inc.*, 411 F.3d 1231, 1238 (5th Cir. 2005).

-9-

status need not be the only factor considered, but it must be a factor considered in making the decision not to rehire the worker.[18]

To prevail on a claim under Section 4311, the plaintiff has the burden of proving discriminatory motive.[19]  Because discrimination is seldom obvious, discriminatory motivation under USERRA may be inferred from a variety of considerations, including but not limited to, the proximity in time between military service and the adverse employment action, inconsistencies between the employer's proffered reason for the action and other actions of the employer, an employer's expressed hostility toward members of the military, and disparate treatment of non-military employees as compared to employees who are service members.[20]  If a plaintiff succeeds in proving that his status was one of the reasons for the employer's action, the employer then has the burden of proving the affirmative defense that the same action would have been taken regardless of the plaintiff's status.[21]

---

[18]     *Bradberry v. Jefferson County, Tex.*, 732 F.3d 540, 545 (5th Cir. 2013).

[19]     *Bradberry v. Jefferson County, Tex.*, 732 F.3d at 545.

[20]     *Coffman v. Chugach Support Services*, 411 F.3d 1231, 1238 (11th Cir. 2005).

[21]     *Bradberry v. Jefferson County, Tex.*, 732 F.3d at 545.

It is an undisputed fact that Mr. Gill is a member of the military service who is protected by this statute, and he argued that his status as a service member was a motivating factor in PCI's failure to reemploy him upon his return from Kuwait.

In his complaint, Mr. Gill alleged that PCI's failure to reemploy him constituted PCI's "[d]iscriminating against JARED GILL because he is USERRA protected as opposed to employees who are non-USERRA protected."[22] But there are no facts set forth in the complaint supporting this claim. Therefore, the claim as stated in the complaint is vague and conclusory, and the complaint contains an insufficient factual basis to state a plausible claim under Section 4311. In his briefing, Mr. Gill apparently asserted a wholly different discrimination claim, arguing that his "status as a service member was a motivating factor for his *termination*."[23] But the complaint does not contain a wrongful termination claim. A claim not raised in the complaint is not properly before the court.[24] Accordingly, this Court finds that Mr. Gill did not assert valid discrimination claims under Section 4311.

Even if Mr. Gill had properly articulated discrimination claims in his complaint, however, this Court finds that there is no valid factual basis for them.

---

[22]     Rec. Doc. 1 at 8.

[23]     Rec. Doc. 26 at 8 [emphasis added].

[24]     *Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990).

In his briefing, Mr. Gill argued that a discriminatory motive should be inferred. When the factors recognized in the jurisprudence as being relevant to making such an inference are evaluated however, such an inference is not possible.  PCI's failure to rehire Mr. Gill did occur shortly after his return from military service, but Mr. Gill did not establish that PCI treated USERRA-protected employees differently from employees that were not USERRA-protected, that PCI or its employees expressed any hostility toward members of the military, or that there was any discrepancy between PCI's proffered reason for its failure to rehire Mr. Gill and any other actions by the company.

To the contrary, PCI presented evidence establishing that it had a written policy stating that the company "respects and honors any employee who provides services in any branch of the uniform services" and "will comply with any and all federal and state laws concerning employees who engage in uniform services."[25]  PCI's vice-president, Mr. Dawson, testified at his deposition that several members of his family served in the military and that he would have wanted them to be able to return to their jobs following deployment.[26]  Mr. Dawson financially supports and is actively involved with the Paralyzed Veterans of America and the Wounded Warriors

---

[25]     Rec. Doc. 24-2 at 25.

[26]     Rec. Doc. 24-3 at 21-24.

-12-

Project.[27]  This evidence was unrefuted, and it establishes that neither Mr. Dawson nor PCI had any animus toward members of the military.

Unrefuted evidence was also presented showing that another PCI employee, Johnathan Fonseca, was assured that his job would be waiting for him when he returned from deployment and, in fact, was permitted to return to work after a brief period of deployment.[28]  This negates the existence of a pattern of behavior by PCI adverse to the interests of employees who are also members of the military services or in violation of USERRA.

Furthermore, to interpret Section 4311 as the plaintiff asks the Court to do would violate one of the basic rules of statutory interpretation.  The first step in statutory interpretation requires this Court to examine the plain meaning of the statutory language.[29]  A court is "authorized to deviate from the literal language of a statute only if the plain language would lead to absurd results, or if such an interpretation would defeat the intent of Congress."[30]  In this case, Section 4311 states

---

[27]      Rec. Doc. 24-3 at 68-69

[28]      Rec. Doc. 3–11.

[29]      *United States v. Spurlin*, 664 F.3d 954, 964 (5th Cir. 2011).

[30]      *Kornman & Assocs., Inc. v. United States*, 527 F.3d 443, 451 (5th Cir. 2008), citing *Lamie v. United States Tr*ustee, 540 U.S. 526, 534 (2004).  See, also, *Caminetti v. United States*, 242 U.S. 470, 490 (1917).

-13-

that an employer may not refuse to reemploy a member of the armed services on the basis of his status as a member of the armed services.  The plaintiff argues that it is solely because he was a member of the military and actively deployed that he was no longer working and therefore was not reemployed upon his return from deployment. If that reasoning were utilized, then any time a member of the armed services was denied reemployment, there automatically would be a violation of Section 4311.  That would be an absurd and consequently impermissible interpretation of the statute.

Accordingly, this Court finds that Mr. Gill failed to state a valid claim for failure to rehire or for termination of employment under Section 4311, and this Court further finds that, even if valid claims had been asserted, the plaintiff failed to carry his burden of proving that PCI had a discriminatory motive for failing to reemploy Mr. Gill when he returned from Kuwait.  Accordingly, Mr. Gill's motion for summary judgment will be denied with regard to his Section 4311 claim, PCI's motion for summary judgment will be granted with regard to Mr. Gill's Section 4311 Claim, and any claim that Mr. Gill might have under Section 4311 will be dismissed.

## (2)   THE SECTION 4312 CLAIM

Under 38 U.S.C. § 4312, USERRA is violated when a service member meeting certain listed criteria is not rehired by his employer upon his return from active duty. Section 4312(a) states that "any person whose absence from a position of employment

-14-

is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits of this chapter. . . ." if (1) the employee has given advance notice of his deployment, (2) the absence from work is for less than five years, and (3) the employee reports to the employer upon his return or submits an application for reemployment.   In this case, there is no dispute concerning the fact that these three criteria were all satisfied.   When a claim arises under 38 U.S.C. § 4312, no showing of discriminatory intent is required.[31]

The evidence presented by the parties in support of their cross-motions for summary judgment establishes, without dispute, that Mr. Gill was away from his job with PCI on active duty military service from March 20, 2013 to approximately February 10, 2014.   It is undisputed that Mr. Gill contacted PCI upon his return, but PCI claims that it had no job for him until October 6, 2014, when he was scheduled to be interviewed for an open rig administrator position with Shell.   Mr. Gill contends that PCI violated USERRA by failing to reemploy him promptly, as required by 38 U.S.C. § 4301(a)(2).   PCI relies upon the affirmative defenses set forth in the statute in arguing that its failure to rehire Mr. Gill did not violate Section 4312.

---

[31]     *Bradberry v. Jefferson County, Tex.*, 732 F.3d at 546, 547; *Murphree v. Communications Technologies, Inc.*, 460 F.Supp.2d 702, 711 (E.D. La. 2006).

-15-

The first issue presented with regard to this claim is the meaning of the word "prompt." As used in USERRA, "prompt" means as soon as practicable under the circumstances of the case.[32]

PCI takes the position that, in light of the downturn in the oil and gas industry that occurred while Mr. Gill was deployed, its offer to reemploy Mr. Gill in October 2014 constituted compliance with the requirement that a service member be promptly reemployed. In his deposition testimony, Mr. Dawson described the general downturn in the oil and gas industry and the particular impact the downturn has had on PCI's business. In 2012, PCI had 16 to 18 customers. (Rec. Doc. 24-3 at 30). Shell was their biggest client, but they also supplied workers to Chevron, Anadarko, and Devon Energy. (Rec. Doc. 24-3 at 31). In 2012, PCI had 175 to 180 employees but when Mr. Dawson was deposed in February 2016, PCI had only 50 employees. (Rec. Doc. 24-3 at 37). Before the downturn, a significant portion of PCI's work was with Shell but at the time of the deposition, PCI was providing no employees for Shell's land work. (Rec. Doc. 24-3 at 49). More particularly, PCI no longer has any employees working in Shell's Permian Basin project. (Rec. Doc. 24-3 at 49, 50, 57). While Gill was deployed, Shell's "whole business approach changed" (Rec. Doc. 24-3 at 48) and they "started shutting down projects" including the Permian Basin

---

[32]     *Rogers v. City of San Antonio*, 392 F.3d at 763.

project.  (Rec. Doc. 24-3 at 49).  PCI experienced a 67.5% overall decrease in the number of employees on location during the time period from March 2013 when Mr. Gill was deployed to June 28, 2016.  (Rec. Doc. 24-3 at 108).

Mr. Gill takes the position that the interview with Shell in October 2014 and the expected offer of work associated with that interview did not come fast enough and consequently was not prompt.  The Fifth Circuit has explained that, depending on the circumstances, "prompt" can mean different things.  Reemployment after weekend National Guard duty generally means that the service member goes back to work on the next regularly scheduled working day, while prompt reinstatement after several years of active duty might require more time, especially if the employer has to reassign or give notice to another employee who occupied the position in the service member's absence.[33]

Deciding whether PCI met its obligation to offer prompt reemployment to Mr. Gill would require making an inference based on the evidence presented, which would result in different conclusions, depending on whether the evidence was viewed in the light most favorable to Mr. Gill or to PCI, since the parties filed cross-motions for summary judgment that both address this same issue.  Accordingly, whether PCI's

---

[33]     *Rogers v. City of San Antonio*, 392 F.3d at 763.

-17-

failed to promptly rehire Mr. Gill is a disputed factual issue that must be left to the jury.

Section 4312(d)(1) articulates two affirmative defenses, stating that an employer is not required to reemploy a person if "the employer's circumstances have so changed as to make such reemployment impossible or unreasonable" or if "the employment from which the person leaves to serve in the uniformed services is for a brief, nonrecurrent period and there is no reasonable expectation that such employment will continue indefinitely or for a significant period."  The same statutory provision also states that "the employer shall have the burden of proving the impossibility or unreasonableness. . . or the brief or nonrecurrent nature of the employment without a reasonable expectation of continuing indefinitely or for a significant period."  PCI asserts both of these affirmative defenses as justifications for their failure to reemploy Mr. Gill immediately upon his return from Kuwait.  PCI must bear the burden of proof with regard to both of these defenses.

PCI failed to carry its burden of proof with regard to the second affirmative defense.  Although it turned out that Shell's Permian Basin project lasted only for about one year, the project as originally hired for did not have a specific shelf life.  It is arguable that any oil well drilling project is necessarily limited in eventual duration because the project will end if only dry holes are drilled or it will convert to

-18-

an oil production project if it is successful in finding recoverable oil reserves.  But it is equally arguable that PCI hired Gill and others with the reasonable expectation that the project would continue indefinitely or for a significant period of time because it would not be logical for a company like Shell to arrange for the employment of approximately sixteen people to work as rig administrators and to put them through an eight week training program if there was no intention for their work to continue for a significant period of time.  As PCI's Mr. Dawson put it, at the beginning of Shell's Permian Basin project, "it looked like it was all gonna be peaches and cream."[34]  Accordingly, this Court finds that PCI failed to establish that Mr. Gill was hired only for a position that was brief, nonrecurrent, or had no reasonable expectation of continuing indefinitely or for a significant period of time.  PCI's motion for summary judgment will be denied with regard to this affirmative defense.

With regard to the first affirmative defense, PCI offered unrefuted evidence that, during the time that Mr. Gill was deployed, its circumstances changed drastically.  Shell terminated its Permian Basin project, there was a general downturn in the oil and gas industry, the number of employees that PCI was able to place with its customers decreased, and PCI's revenues correspondingly plummeted.  Mr. Dawson testified at his deposition that the only reason Gill was not rehired was

---

[34]     Rec. Doc. 30-22 at 1.

because there were no positions available when he returned.[35]   There were no positions available on Shell's Permian Basin project for which Gill had trained,[36] and Mr. Dawson also testified that there also were no positions available with any of PCI's other customers either.[37]   Therefore, PCI contends that the position Mr. Gill was hired to fill did not exist when he returned from overseas and further contends that it had no other different position that could be offered to him.

Although Mr. Dawson testified that there were no positions available with any of PCI's customers when Mr. Gill returned from Kuwait, Mr. Dawson did not identify any customers that he contacted or the dates on which he made inquiries about positions that Mr. Gill might be able to fill.   This evidence is too conclusory to support summary judgment.   Furthermore, Mr. Gill testified that the PCI representatives he spoke with after he returned from deployment did not, at any time, inform him, during their multiple text and telephone conversations between February and October 2016, that there were no positions available.   Instead, he testified that he was basically "strung along" with suggestions that he "hang in there" while a position was located.   Mr. Gill also argued that some of the other rig administrators hired by

---

[35]     Rec. Doc. 24-3 at 7.

[36]     Rec. Doc. 24-3 at 8, 14, 54.

[37]     Rec. Doc. 24-3 at 29, 55, 64.

PCI to work for Shell on the Permian Basin project were permitted to transition to other positions and that he should have been offered a similar opportunity.  He also argued that, because at least one other rig administrator hired at about the same time he was remained employed when he returned from deployment,[38] it is not a foregone conclusion that he would have lost his job had he not been called up for active duty.

The plaintiff relied heavily on *Vahey v. General Motors Co.*, 985 F.Supp.2d 51 (D.D.C. 2013), to support those arguments.  In *Vahey*, a General Motors employee enlisted in the military, served for about four years, and then returned to his civilian job.  GM put him on the payroll for two weeks, closed the plant where he was assigned to work, and laid him off.  He lost his job in the first round of layoffs, while some other employees were laid off later.  Some of the employees were permitted to transfer to other plants.  GM argued that there had been a change in circumstances similar to that posited by PCI in this case, including GM's bankruptcy.  The court found that there was an issue of material fact concerning whether GM would have laid Mr. Vahey off even if he had not gone into the military.  There was an issue as to whether he might have been one of the employees who survived the lay offs, and

---

[38]     Mr. Dawson testified that, of rig administrators hired at approximately the same time as Mr. Gill, only one remains employed by PCI.  (Rec. Doc. 24-3 at 53).  This person was not identified.

he might have been one of the employees who was allowed to transfer to another job. The court denied GM's motion for summary judgment.

Although PCI presented evidence showing that most of the rig administrators hired along with Mr. Gill lost their jobs, PCI did not prove that the rig administrators were all laid off before Mr. Gill returned from active duty.  To the contrary, PCI presented evidence showing that at least one of those persons was still employed by Shell when Mr. Gill had returned from deployment and was seeking to be reemployed.[39]  While PCI argues that Mr. Gill would have lost his job even if he had not been deployed, this Court is persuaded that the reasoning employed in the *Vahey* case is sound and militates in favor of finding that there is an issue of material fact as to whether Mr. Gill would have lost his job had he not been deployed.  It is possible that he, like at least one other rig administrator hired for the Permian Basin project, might have retained his employment.  PCI had the burden of proving that it would have been impossible or unreasonable to rehire Mr. Gill upon his return from Kuwait.  But when the evidence is construed in a light most favorable to the plaintiff, there remains a disputed issue of material fact on this issue, which precludes summary judgment in PCI's favor with regard to the changed circumstances defense.

---

[39]     Rec. Doc. 24-3 at 53.

When the evidence presented by the plaintiff in support of his Section 4312 claim and that presented by the defendant in support of its affirmative defenses is considered, there is an unresolved factual dispute concerning whether PCI failed to promptly reemploy Mr. Gill.  This issue precludes summary judgment in either party's favor with regard to the plaintiff's claim under Section 4312 and the defendant's affirmative defenses to that claim.  Accordingly, both parties' motions for summary judgment will be denied with regard to Mr. Gill's Section 4312 claim.

**(3)   THE SECTION 4313 CLAIM**

Under 38 U.S.C. § 4313, USERRA is violated when an employee returning from more than ninety days of military service is not rehired in his prior position or placed in "a position of like seniority, status[,] and pay."  Thus, even if the returning employee's prior position no longer exists, "[a]n employer desiring to relieve itself of its obligation to re-employ a veteran. . . must produce evidence that there was no other position of like seniority, status, and pay to which the veteran could be restored."[40]  Whether such a position exists is a fact issue, and the burden of proof is on the employer.[41]

---

[40]      *Grove v. Assured Self Storage*, No. 4:11cv642, 2013 WL 3098343, at *2 (E.D. Tex. June 18,2013).

[41]      *Grove v. Assured Self Storage*, 2013 WL 3098343, at *2.

In this case, as noted above, PCI's vice-president, Mr. Dawson, testified at his deposition that there were no positions available with any of PCI's customers when Mr. Gill returned from Kuwait, but Mr. Dawson did not identify any customers that he contacted or the dates on which he made inquiries about positions that Mr. Gill might be able to fill.  Although Mr. Dawson's testimony is unrefuted, it is too conclusory to support summary judgment in PCI's favor.  The evidence that was presented also showed that some of the PCI employees who were hired at the same as Mr. Gill were able to transition from working as rig administrators to working in other settings.  Whether they were placed in new positions as the plaintiff suggests, or were simply doing the same work in a different location as the defendant suggests, is in dispute.[42]  However, it is undisputed that one PCI employee, Josh McManus, "was brought into Shell Houston Woodcreek to take a management position under Sharon Lampl" and another, Andrew Serpas, was given "another Shell position as a Well Operation Technician with the Deepwater Team and relocated to One Shell Square in New Orleans."[43]  Those two gentlemen were clearly transferred to different positions at some point and were no longer working as rig administrators for Shell.

---

[42]     According to Mr. Dawson, as field operations ceased, some of these employees were temporarily moved to Shell's offices at Woodcreek in Houston to wind up the paperwork.  (Rec. Doc. 24-3 at 55-56).  But the decisions about moving people to other locations were made by Shell not by PCI.  (Rec. Doc. 24-3 at 66).

[43]     Rec. Doc. 26-4 at 4.

-24-

Three more of the rig administrators hired along with Mr. Gill – Mike Smith, Aaron Knight, and Steve Tarter – "were assigned to the special project at Shell Houston Woodcreek."[44]  The only inference to be drawn from that statement is that they too were permitted to transfer to different positions – "the special project" being something other than the Permian Basin project – although they remained working with the same PCI customer.  Another of the rig administrators, Jamey McDaniel, "was sent into the field."[45]  It is not clear how working in the field differed from being a rig administrator but the only inference to be drawn is that he was doing something in the field than he had been doing before.  This evidence stands in stark contrast to PCI's assertion that the only changes made with regard to the rig administrators was that some were laid off and some were permitted to wrap up their rig administration work in an office setting rather than on a rig.  This unrefuted evidence demonstrates that there were positions to which some of the rig administrators were permitted to transfer after the Permian Basin project was terminated.  It is also unrefuted that Mr. Gill was not offered an opportunity to work "in the field," on a "special project," on the "Deepwater Team," or in management.  However, no evidence was presented to show whether these positions were similar in seniority, status, and pay to the rig

---

[44]      Rec. Doc. 26-4 at 4.

[45]      Rec. Doc. 26-4 at 4.

administrator position that Mr. Gill occupied before his deployment.  Therefore, there remains a disputed issue of material fact concerning whether Section 4313 was violated.

PCI responded to the plaintiff's argument concerning Section 4313 with references to the escalator principle that is codified in Section 4316.  Under Section 4316, a service member reemployed in accordance with USERRA "is entitled to the seniority and other rights and benefits determined by seniority that the person had on the date of the commencement of service in the uniformed services plus the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed."  When this principle is applied, an employee called away from work on military service receives, upon his return to the work place, the promotions, pay increases, and increased fringe benefits that similarly situated workers received while he was away rather than going back to the precise position he previously occupied as though no time had elapsed.  This escalator principle only applies to those employers who have seniority systems.[46]  PCI presented unrefuted evidence establishing that it does not have a seniority system.[47]  Furthermore, Mr. Gill would have an escalator principle claim under Section 4316 only if PCI had

---

[46]     *Rogers v. City of San Antonio*, 392 F.3d at 763-64.

[47]     Rec. Doc. 33-3 at 87.

-26-

reemployed him but then denied him raises, promotions, or increased benefits given to other similarly-situated employees while he was away with the military.  Because he was not reemployed, he cannot establish such a claim.  But the plaintiff is not seeking to recover under Section 4316.  He is seeking, instead, to recover under Section 4313 because he was not offered a transfer to a different position.  Therefore, the defendant's arguments based on Section 4316 are inapplicable to the plaintiff's argument regarding Section 4313.

The defendant failed to satisfy its burden of proving that there were no positions of like seniority, status, and pay to which Mr. Gill could have been employed upon his return from deployment, and the plaintiff failed to satisfy its burden of proving that PCI violated Section 4313.  Accordingly, both parties' motions for summary judgment will be denied with regard to the plaintiff's Section 4313 claim.

## C.   THE PLAINTIFF'S CIVIL RIGHTS CLAIM

In his complaint, the plaintiff contends that PCI violated his civil rights by failing to adhere to USERRA.  Not every violation of a federal statute – even if proven – is a constitutional violation, and in this case, Mr. Gill has not carried his burden of establishing that PCI violated any right he might have that is afforded or protected by the United States Constitution.  In support of his civil rights claim, Mr.

Gill states that he was deprived of his liberty for a substantial amount of time, but there is no factual support for that contention. This Court has already determined that Mr. Gill has not proven that PCI's failure to rehire him was based on any discriminatory motive. Mr. Gill has not proven that his employment with PCI was on any basis other than at will, and this Court notes that an employee whose job may be terminated at will generally has no constitutionally-protected property interest in continued employment.[48]  Accordingly, to the extent that the plaintiff attempted to assert a constitutional violation or civil rights violation, summary judgment will be granted in favor of PCI and any such claim will be dismissed.

## D.   The Willfulness Claim

The plaintiff claims that PCI willfully violated USERRA by making no attempt to reinstate his employment when he returned from Kuwait and by failing to respond to his requests for reinstatement.[49]  The evidence presented by the parties establishes, however, that Mr. Gill had extensive contact with Mr. Allen and Mr. Dawson of PCI upon his return to this country. The evidence also shows that PCI's vice-president, Mr. Dawson, tried to find a position for Mr. Gill, including the position with Shell

---

[48]     *Stem v. Gomez*, 813 F.3d 205, 210 (5th Cir. 2016); *Conner v. Lavaca Hosp. Dist.*, 267 F.3d 426, 439 (5th Cir. 2001).

[49]     Rec. Doc. 1 at 5.

-28-

that Mr. Gill could have interviewed for on October 6, 2014.  Accordingly, this Court finds that Mr. Gill failed to prove that PCI acted willfully, his motion for summary judgment will be denied with regard to that claim, PCI's motion for summary judgment will be granted with regard to that claim, and Mr. Gill's claim for liquidated damages will be denied.

### E.   PUNITIVE DAMAGES AND DAMAGES FOR MENTAL AND EMOTIONAL DISTRESS UNDER USERRA

In his complaint, Mr. Gill alleged that he suffered great mental pain and suffering and a loss of enjoyment of life as well as acute mental distress, embarrassment, humiliation, and permanent emotional scarring[50] due to his not being rehired by PCI following his military service.  He seeks to recover compensatory damages for those alleged injuries, and he also seeks to recover punitive damages. PCI argued, in support of its motion for summary judgment, however, that the plaintiff is not entitled to recover punitive damages or damages for mental or emotional distress under USERRA.  Under USERRA, a claimant may be awarded reinstatement in his employment and lost wages or benefits but the statute does not permit recovery for mental anguish, pain, or suffering, or punitive damages.[51]

---

[50]   Rec. Doc. 1 at 6, 9.

[51]   38 U.S.C. § 4323(d); *Carter v. United Parcel Service, Inc.*, No. 3:13-CV-2802-B, 2014 WL 1386351, at *3 (N.D. Tex., Apr. 8, 2014).

-29-

Accordingly, this Court finds, as a matter of law, Mr. Gill cannot recover compensatory damages for mental anguish, pain, or suffering, and he cannot recover punitive damages under USERRA.  Therefore, summary judgment will be entered in PCI's favor with regard to this issue.

## F.   NEGLIGENT TRAINING AND SUPERVISION

In his complaint, the plaintiff alleges that PCI was negligent for failing to properly train and supervise its employees.[52]   The complaint lacks a factual foundation for this claim, and the plaintiff has not articulated a causal connection between the alleged lack of training and supervision with the alleged USERRA violation or any other claim asserted in the complaint.  PCI seeks summary judgment with regard to this claim.  Finding that the plaintiff has failed to prove the necessary elements of any such claim, this Court will grant summary judgment in PCI's favor with regard to this claim and dismiss the plaintiff's claim for negligent training and supervision.

## G.   NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

In his compliant, the plaintiff attempted to articulate a negligent infliction of emotional distress claim under Louisiana state law, allegedly resulting from PCI's failure to rehire him after he returned from Kuwait.  To recover for intentional

---

[52]      Rec. Doc. 1 at 27.

-30-

infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.[53] "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.  Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."[54]

While the loss of employment is certainly not a triviality, the plaintiff has not established that PCI's failure to rehire him was so outrageous as to support a claim for intentional infliction of emotional distress.  Furthermore, Mr. Gill failed to present evidence establishing that his emotional distress was sufficiently severe to support such a claim.  The evidence is undisputed that Mr. Gill saw a mental health counselor in Texas and then one in Louisiana.  He does not recall the issues, if any, related to PCI that he discussed with the counselors.  He was not prescribed any medication, including anti-depressant medication.  He admitted that the counseling sessions

---

[53]     *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991).

[54]     *White v. Monsanto Co.*, 585 So.2d at 1209.

-31-

generally related to the stress resulting from his active duty military service.   He denied having any current emotional problems.

This Court finds that Mr. Gill has not presented evidence sufficient to support a claim of intentional infliction of emotional distress.   Accordingly, summary judgment will be granted in PCI's favor with regard to this claim, and the claim will be dismissed.

### CONCLUSION

For the foregoing reasons, the cross motions for summary judgment (Rec. Docs. 24 and 26) will be granted in part and denied in part.   More particularly,

(a)     The plaintiff's motion for summary judgment (Rec. Doc. 26) will be denied with regard to his Section 4311 claim, the defendant's motion for summary judgment (Rec. Doc. 24) will be granted with regard to the plaintiff's Section 4311 claim, and any claim that the plaintiff might have under Section 4311 will be dismissed.

(b)     Both parties' motions for summary judgment (Rec. Doc. 24 and 26) will be denied with regard to the plaintiff's Section 4312 claim.

(c)     Both parties' motions for summary judgment (Rec. Doc. 24 and 26) will be denied with regard to the plaintiff's Section 4313 claim.

(d)     To the extent that the plaintiff asserted a constitutional violation or civil rights violation claim, the plaintiff's motion for summary judgment (Rec. Doc. 26) will be denied, the defendant's motion for summary judgment (Rec. Doc. 24) will be granted, and any such claim will be dismissed.

(e)     To the extent that the plaintiff asserted a claim that the defendant acted willfully in failing to respond to his requests for reinstatement, in failing to reinstate his employment, or in violating USERRA, the plaintiff's motion for summary judgment (Rec. Doc. 26) will be denied, the defendant's motion for summary judgment (Rec. Doc. 24) will be granted, and the plaintiff's claim for liquidated damages will be dismissed.

(f)     Having found as a matter of law that the plaintiff cannot recover compensatory damages for mental anguish, pain, or suffering or punitive damages under USERRA, the defendant's motion for summary judgment (Rec. Doc. 26) will be granted with regard to the plaintiff's claim for the recovery of such damages, the plaintiff's cross-motion (Rec. Doc. 24) will be denied with regard to that claim, and the claim will be dismissed.

(g)     Having found that the plaintiff failed to prove the necessary elements of his claim for negligent training and supervision under Louisiana state law, the defendant's motion for summary judgment (Rec. Doc. 24) will be granted with regard

-33-

to that claim, the plaintiff's cross-motion (Rec. Doc. 26) will be denied with regard to that claim, and the negligent training and supervision claim will be dismissed.

(h)     Having found that the plaintiff failed to prove the necessary elements of his claim for intentional infliction of emotional distress under Louisiana state law, the defendant's motion for summary judgment (Rec. Doc. 24) will be granted with regard to that claim, the plaintiff's cross-motion (Rec. Doc. 26) will be denied with regard to that claim, and the claim will be dismissed.

(i)     Discussion of any other issues raised in the cross-motions for summary judgment (Rec. Docs. 24 and 26) is pretermitted.

Signed at Lafayette, Louisiana on this 31st day of August 2016.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

-34-